[S.F. No. 23096. In Bank. June 28, 1974.]

H. PAT BALEN, Plaintiff and Appellant, v.
PERALTA JUNIOR COLLEGE DISTRICT, Defendant and Respondent.

822

## COUNSEL

Dan W. Lacy, Strauss & Neibauer and Strauss, Neibauer & Lacy for Plaintiff and Appellant.

Richard J. Moore, County Counsel, and Kelvin H. Booty, Jr., Deputy County Counsel, for Defendant and Respondent.

## OPINION

**MOSK, J.**—Plaintiff H. Pat Balen, a certificated public school teacher, appeals from a summary judgment for defendant college district in an action to compel the district to set aside its allegedly wrongful dismissal of plaintiff, and for other related relief.

■ Because this appeal arises from a summary judgment, we must accept as true the following facts generally alleged by plaintiff in his affidavits. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725 [299 P.2d 257].)

Balen was hired in 1965 as an hourly instructor to teach speech in the evening program at Laney College. He was continuously rehired in the same position for a total of four and one-half years. As an active Republican campaigner, Balen attempted to organize the other part-time instructors purportedly to protect their interests. As a result of such political activity, he was told by the head of the speech department "that she was afraid to recommend [him] for a full-time position because of [his] politics even though she thought [he] was an eminently qualified teacher." This fear, she stated, stemmed from the fact that "she feared she would not get tenure if she recommended [him]." Concerned about such statements, Balen brought a formal complaint to the district board of trustees in October 1969. The board accepted the complaint and advised him an investigation of the matter would be conducted. In December 1969, however, before any investigation was initiated, he received oral notification that his contract would not be renewed the following semester.

After oral notice of his termination, Balen made several unsuccessful attempts to ascertain the actual reasons for his discharge. Although the original justification given was that his speech classes were being phased out, several other instructors suggested it was because his politics did not comport with the liberal image of the college. In January 1970 he met with the district chancellor and the college president to express his grievances. These officials verified he was in fact dismissed, although without cause or hearing because he was only a temporary employee.

Five months later Balen finally received written confirmation of his dismissal, and subsequently brought this action seeking reinstatement, lost salary, and damages. The trial court found him to be a temporary employee and dischargeable at will in accordance with the terms of section 13446 of the Education Code,[1] and thereupon granted the district's motion for summary judgment and simultaneously dismissed the action.

Balen contends that he qualifies as a permanent or probationary employee, and could not have been discharged without notice and hearing; that even if classified as a temporary employee he was entitled to relief because section 13446, providing that the governing boards of school dis-

---

[1]Unless otherwise indicated, all code references herein will be to the Education Code.

tricts may dismiss temporary employees at their pleasure, is unconstitutional; and that his discharge was politically motivated in violation of the First and Fourteenth Amendments. Because, as discussed *infra*, we conclude that Balen is properly classified as a probationary instructor and entitled by statute to pretermination notice and hearing, it is unnecessary to reach his constitutional claims.[2] To that extent the posture of this case is similar to that of *Perry* v. *Sindermann* (1972) 408 U.S. 593, 598 [33 L.Ed.2d 570, 578, 92 S.Ct. 2694].

The essence of the statutory classification system is that continuity of service restricts the power to terminate employment which the institution's governing body would normally possess. Thus, the Legislature has prevented the arbitrary dismissal of employees with positions of a settled and continuing nature, i.e., permanent and probationary teachers,[3] by requiring notice and hearing before termination. (§§ 13404, 13443; *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480]; *Lunderville* v. *Emery Unified Sch. Dist.* (1968) 262 Cal.App.2d 459 [68 Cal.Rptr. 768].) Substitute and temporary teachers, on the other hand, fill the short range needs of a school district, and may be summarily released absent an infringement of constitutional or contractual rights. (§§ 13445, 13446; *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771 [97 Cal.Rptr. 657, 489 P.2d 537].) Because the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted.

The classification system has precipitated recurring litigation; teachers not infrequently seek the greater degree of position permanency which a higher category affords. (See, e.g., *Holbrook* v. *Board of Education* (1951) 37 Cal.2d 316 [231 P.2d 853]; *Rutley* v. *Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702 [107 Cal.Rptr. 671]; *Curtis* v. *San Mateo Junior College Dist.* (1972) 28 Cal.App.3d 161 [103 Cal.Rptr. 33]; *Vittal* v. *Long Beach Unified Sch. Dist.* (1970) 8 Cal.App.3d 112 [87 Cal.Rptr. 319]; *Hunt* v. *Alum Rock Union Elementary Sch. Dist.* (1970) 7 Cal.

[2]In his action against the district Balen filed a joint petition for writ of mandate and complaint for damages. In addition to reinstatement and lost wages, he prayed for special and general damages arising from personal injuries allegedly suffered when his employment was terminated because of his political beliefs and participation in the activities of the Republican Party. Because we granted a hearing only on the propriety of the summary judgment and subsequent dismissal, his allegations not considered in this opinion are left for resolution in further proceedings in the trial court.

[3]Although we will refer to the higher classifications as permanent and probationary throughout this opinion, we note these designations were changed in 1972 to "regular" and "contract" for community college employees. (§§ 13345.10, 13346.)

App.3d 612 [86 Cal.Rptr. 663].) Concomitant with such litigation has been an unprecedented growth in the state's education statutes and administrative codes. As a result of the intertwining of changing legislative classifications and interpretative court decisions, it is understandably difficult for an individual teacher to define conclusively his status at a particular time.[4] The instant case arises within this framework.

Balen taught a total of four and one-half years before being informed his contract would not be renewed. His academic credentials are unchallenged, and his prior experience includes chairmanship of the speech department at a community college in Hawaii. He participated in the retirement plan of the district and was granted sick leave benefits in the same manner as permanent and probationary teachers in the district. He was continuously rehired on annual contracts, and the traditional nature of his course was one of accepted importance. The school officials had ample opportunity to evaluate his teaching ability, and the record reflects no dissatisfaction on their part. In short, plaintiff's continuity of service would seem to create the necessary expectation of employment which the Legislature has sought to protect from arbitrary dismissal by its classification scheme.

Apart from the parties' apparent expectation of a continuing relationship, the statutes in effect when Balen was hired support his contention that he should be classified as a probationary instructor. In 1965 the Education Code required that a teacher hired for a full year (§ 13334),[5] or whose duties continued past the first three school months (§§ 13337,[6]

---

[4]This was particularly evident for community college instructors who, prior to 1972, fell within the classification scheme designed for teachers in grades K—12. Recognizing that different standards should govern college level educators, the Legislature enacted a separate classification scheme (§§ 13345-13346.30) and dismissal process (§§ 13480-13484) for community college instructors, effective September 1, 1972.

[5]Section 13334 provides that "Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees."

[6]Section 13337 requires in part that "Governing boards of school districts shall classify as temporary employees those persons requiring certification qualifications, other than substitute employees, who are employed to serve from day to day during the first three school months of any school term to teach temporary classes not to exist after the first three school months of any school term or to perform any other duties which do not last longer than the first three school months of any school term, or to teach in special day and evening classes for adults or in schools of migratory population for not more than four school months of any school term. *If the classes or duties continue beyond the first three school months* of any school term or four school months for special day and evening classes for adults, or schools for migratory popu-

13446)[7] be classified probationary, unless designated permanent or substitute. Because Balen worked for more than three months his first year, was hired thereafter for a full year, and was not considered a permanent or substitute teacher, he meets the statutory prerequisites for probationary employment.

The district argues sections 13334, 13337, and 13446 should not be applied to part-time instructors and, in any event, that Balen's status was changed by a later statute. In 1967, the Legislature added to the Education Code section 13337.5 which allows districts to hire long-term temporary community college teachers, and provides in its last paragraph that "any person who is employed to teach adult or junior college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446." Because Balen's workload never exceeded 40 percent of a full-time teacher's assignment, the district claims he was properly classified during the entire course of his employment, notwithstanding the statutes in effect when he was initially employed.

We doubt the Legislature intended that section 13337.5 operate to divest plaintiff of his previously acquired status. ■ As a general rule of construction, statutes are not to be given retroactive effect unless the intent of the Legislature cannot be otherwise satisfied. (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 149 [23 Cal.Rptr. 592, 373 P.2d 640].) "The Legislature, of course, is well acquainted with this fundamental rule, and when it intends a statute to operate retroactively it uses clear language to accomplish that purpose." (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865].) There is nothing in section 13337.5 to indicate it was intended to be applicable to employment rendered prior to its enactment.[8]

---

lation, *the certificated employee, unless a permanent employee, shall be classified as a probationary employee.* The school year may be divided into not more than two school terms for the purposes of this section." (Italics added.)

[7]Section 13446 reads in pertinent part that "A temporary employee who is not dismissed during the first three school months, or in the case of migratory schools during the first four school months of the school term for which he was employed and who has not been classified as a permanent employee shall be deemed to have been classified as a probationary employee from the time his services as a temporary employee commenced."

[8]An exception to the general rule that statutes are not construed to apply retroactively arises when the legislation merely clarifies existing law. (*Martin* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71].) Section 13337.5,

The paragraph of section 13337.5 which the district cites to justify its classification of Balen was not part of the original bill submitted to the Legislature, but was added in committee. (1 Sen. J. (1967 Reg. Sess.) p. 863.) The principal portion of the original bill created a long-term temporary status, a classification within which the district urges Balen falls. That part of the statute, however, specifically limits such a classification to persons employed for not more than "two semesters or quarters within any period of three consecutive years." Failing to consider this limitation, the district selectively relies on the last paragraph of the statute alone. Because Balen held his position for over four years, he could not be classified under section 13337.5 for more than two of those years, a circumstance which would leave him unclassified the remainder of the time. Such an anomalous result is additional indication that the statute should not be applied retroactively.

Nor is there merit to the contention that the statutes plaintiff relies on for probationary status, sections 13334, 13337, and 13446, are not applicable to part-time employment. The probationary plan envisions a two-fold purpose: it allows the new teacher sufficient time to gain additional professional expertise, and provides the district with ample opportunity to evaluate the instructor's ability before recommending a tenured position. A part-time instructor, unlike the day-to-day substitute, generally serves under conditions comparable to those of his full-time counterpart; thus there is no reason for differentiating between their statuses for the purpose of attaining probationary classification, nor has the Legislature directed us to do so. The law is well settled that tenure in a junior or community college may be attained by teaching in other than regular daytime classes: e.g., credit may be achieved by teaching in evening classes (§ 13311; *Curtis* v. *San Mateo Junior College Dist.* (1972) *supra,* 28 Cal. App.3d 161), adult classes (§ 13309), prison classes (*Beseman* v. *Remy* (1958) 160 Cal.App.2d 437 [325 P.2d 578]), or by hourly employment (*Vittal* v. *Long Beach Unified Sch. Dist.* (1970) *supra,* 8 Cal.App.3d 112).

The district also argues that regardless of plaintiff's initial status, section 13337.5 should apply prospectively from 1967, reclassifying him

---

however, substantially changes the classification system by expanding the temporary designation to include not only designated yearly employees, but other instructors who do not meet the new minimum workload requirement for attaining probationary status. Prior to the enactment of section 13337.5, a junior college teacher could be considered temporary only if he worked less than three months. (§ 13337.) Applying that section to pre-1967 employment would dramatically affect the rights of a teacher who previously attained probationary status and could be discharged only for cause after notice and hearing.

as temporary from that date. In support of this contention, the district cites its policy of dismissing part-time instructors prior to May 15 each year, and rehiring them after that date. Because classification is annual (§ 13335) and status is governed by the statutes in effect at time of hiring (*Matthews* v. *Board of Education* (1962) 198 Cal.App.2d 748 [18 Cal. Rptr. 101]), the district asserts plaintiff was properly classified as temporary when rehired in 1967.

This argument is unpersuasive. In *Sitzman* v. *City Board of Education* (1964) 61 Cal.2d 88, 90 [37 Cal.Rptr. 191, 389 P.2d 719], we held a probationary teacher entitled to hearing upon discharge in accordance with a statute which became effective during the course of her employment. Although the teacher had been hired under a statute which did not afford a hearing upon termination, we determined that the obtaining of the statute's benefits "depends solely on the existence of a status of probationary employee, and petitioner's status as a probationary teacher continued after the effective date of the statute."

Here we have the converse of *Sitzman:* the right to a hearing is alleged to have been taken away during the course of employment, and plaintiff's status downgraded accordingly. ■ Application of a statute to destroy interests which matured prior to its enactment is generally disfavored. (2 Sutherland, Statutory Construction (4th ed. 1973) § 41.04.) ■ Absent specific legislative provision for retroactivity or other indication of legislative intent, it would manifestly be unjust to interpret the new section in a manner that would strip petitioner of his previously acquired status.[9]

■ The district's contention that Balen was previously dismissed, then rehired in a new category effective as of 1967, deserves little consideration. The record discloses the policy of the district to dismiss its part-time instructors annually prior to May 15, regardless of performance, and subsequently to rehire them.[10] Such an administrative practice of routine blanket dismissals to circumvent proper classification carries with it con-

---

[9]Because we have decided the Legislature did not intend that section 13337.5 apply to Balen, we need not reach the question whether procedural due process, once given, is a vested right.

[10]In 1970, for instance, Laney College alone "dismissed" over 230 part-time instructors. The motivation for such a policy is unclear. If the instructors were in fact temporary or substitute, notice is not required and their contract simply lapses. Perhaps the district instituted this practice to insure compliance with sections 13443 and 13447 which deem a probationary teacher automatically rehired if not dismissed prior to May 15. If such is the case, the procedure is certainly inadequate, as it fails to provide the thoughtful, deliberate, and individual consideration for each employee which section 13443 demands.

comitant liability; i.e., the form letter dismissal with virtually automatic rehiring creates an expectancy of reemployment. (*Perry* v. *Sindermann* (1972) *supra,* 408 U.S at pp. 601-602 [33 L.Ed.2d at pp. 579-580]; *Sherman* v. *Board of Trustees* (1935) 9 Cal.App.2d 262 [49 P.2d 350].) Nor can the provisions of the Education Code lawfully be avoided by employing a teacher under consecutive part-time contracts. (*Beseman* v. *Remy* (1958) *supra,* 160 Cal.App.2d 437.) As Justice White wrote in *La Rue* v. *Board of Trustees* (1940) 40 Cal.App.2d 287, 293 [104 P.2d 689], "the action of the school board in making yearly contracts with respondents, with the idea of employing them for one year only, is not determinative of their status . . . ." Furthermore, even if the district in fact intended to dismiss Balen in 1967, which appears unlikely on this record, the discharge did not comply with the requisite notice and hearing requirements for terminating the employment of a probationary instructor. (§ 13443.)

The district's remaining contentions require little discussion. In the interim between his termination and this action, Balen was elected to the district board of trustees. We need not decide whether an individual may serve lawfully both as a member of the district's governing board and an employee of that board, because plaintiff concedes that he cannot serve in both positions simultaneously. (Cf. 56 Ops.Cal.Atty.Gen. 556 (1974).) Instead, he desires a choice of employment, monetary relief, or at a minimum, elimination of any taint on his professional record. His subsequent election to the school board does not preclude him from the statutory right to a pretermination hearing in this instance.

 Section 13443, subdivision (b), requires that a dismissed probationary instructor request a hearing within seven days of notice or his right to a hearing will be deemed waived. The district contends Balen is not now entitled to a hearing because he did not allege compliance with this provision. Subdivision (c) of this section, however, requires that the notice of termination advise the employee of his right to a hearing. Because the district did not comply with the statutory requirement in its notice, it is foreclosed from raising the statute as a defense.

From the foregoing analysis, we are led ineluctably to the conclusion that Balen was a probationary employee when hired, and retained that status over the course of his employment. In so holding, we are then met with plaintiff's contention that he now qualifies for a permanent position by operation of law. The controlling statute for attaining tenure, section 13304, provides that "Every employee of a school district of any type or class . . . after having been employed by a district for *three complete*

*consecutive school years* in a position or positions requiring certification qualifications, is re-elected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent teacher of the district." (Italics added.)

Complete school years are further defined as those in which the employee served at least "75 percent of the number of days the regular schools of the district . . . are maintained" (§ 13328) or "75 percent of the number of hours considered as a full-time assignment for permanent employees having similar duties." (§ 13328.5; *Vittal* v. *Long Beach Unified Sch. Dist.* (1970) *supra,* 8 Cal.App.3d 112.) From the meager evidence presented by affidavit we are unable to ascertain that Balen carried the workload required by these sections, and therefore cannot as a matter of law credit the years of partial work toward the prerequisites for permanent employment. We hold only that even if he is a probationary teacher he can be dismissed only for cause, after notice and hearing. Since the board provided no hearing, summary judgment for defendant and dismissal of the action were improper.

It has been suggested that the judicial process is particularly unsuited for intervention in the teacher classification system, in that it tends to unduly restrict a school district's necessary flexibility in assignment practices. By requiring the district to properly classify a teacher, however, courts do not purport to inhibit the administrative assignment of teachers as directed by the Education Code. ■ We recognize that the school administration must be afforded wide discretion and latitude in controlling the routine operations and daily affairs of the school in order to meet the innumerable local problems which may occur. Administrative decisions which invariably affect personnel must be made as the needs of the school change.

This accepted concept, however, cannot be adapted as a shield for arbitrary dismissal practices. The vice inherent in such practices emerges in this case. Although the district informed Balen he was not being rehired because his class was phased out, the record reveals that two teachers of similar qualifications were hired after his release to teach the identical classes. A pretermination hearing might have served to ferret out the actual reasons for dismissal; if the motivation was truly a reduction in classes (see § 13447), Balen could have investigated the surrounding circumstances and, in any event, sought exoneration or mitigation of any damaging professional overtones which could impede future employment. In the absence of such procedural safeguards antecedent to the effective date

of termination, the substantive protection provided by the classification system would be rendered ineffective.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied July 25, 1974.