[Civ. No. 36325. First Dist., Div. Two. Mar. 23, 1976.]

HEALDSBURG POLICE OFFICERS ASSOCIATION et al.,
Plaintiffs and Respondents, v.
CITY OF HEALDSBURG et al., Defendants and Appellants.

**COUNSEL**

John A. Klein, City Attorney, for Defendants and Appellants.

Robert Y. Bell and John E. Short for Plaintiffs and Respondents.

**OPINION**

**KANE, J.**—Defendants appeal from a peremptory writ of mandate and orders of contempt issued thereon.

The present action was brought by respondents, the Healdsburg Police Officers Association and its nine individual members, against appellants, the City of Healdsburg, five city councilmen and the city manager. The facts reveal that three city police officers were summarily discharged by

appellants on September 16, 1974. On October 3, 1974, the six remaining association members walked off their job in protest of the dismissal of their fellow officers and as a consequence they too were dismissed by the city. After the city refused to hold a hearing in the matter, respondents filed a petition for writ of mandate in the lower court claiming inter alia that: their discharge without notice and hearing violated several provisions of the Meyers-Milias-Brown Act ("MMB Act") (Gov. Code, § 3500 et seq.); unlawfully interfered with their organizational rights (Lab. Code, § 922); and violated the basic precepts of procedural due process secured by the Constitution.

After a trial and receiving evidence, the court below concluded: that at the time respondents were employed by the city the Healdsburg Police Department Manual ("Manual") explicitly granted the employees of the police department the right to a hearing before dismissal or imposition of other disciplinary measure; that this provision of the Manual became a part of the employment agreement between the city and respondents; and that as a consequence respondents were entitled to reinstatement until they were given an opportunity to be heard in their own defense. In accordance therewith, on October 29, 1974, a peremptory writ of mandate was issued ordering appellants to reinstate respondents to their former employment with back pay. Based upon the peremptory writ, a contempt proceeding was initiated by respondents, at the conclusion of which the city, under threat of sanctions, reinstated the nine individual respondents to their previous positions with back pay as ordered by the court. Appellants filed notices of appeal from both the peremptory writ of mandate and the contempt orders.

Although the rulings of the trial court are being challenged on a variety of grounds, as appellants themselves admit, the key issue on appeal is whether respondents were dischargeable at will without notice and hearing. While appellants maintain that pursuant to statute respondents held their offices at pleasure (Gov. Code, §§ 36505, 36506)[1] and could be dismissed without cause and without notice and hearing (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771 [97 Cal.Rptr. 657, 489 P.2d 537]; *Ball* v. *City Council* (1967) 252 Cal.App.2d 136 [60

---

[1]Government Code, section 36505, provides that "The city council shall appoint the chief of police. It may appoint a city attorney, a superintendent of streets, a civil engineer, and such other subordinate officers or employees as it deems necessary." Government Code, section 36506, in turn, sets out that "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees. *Such officers and employees hold office during the pleasure of the city council.*" (Italics added.)

Cal.Rptr. 139]), respondents contend that in the case at bench the right to a hearing attached by virtue of both the regulatory provisions and the constitutional mandate of due process. A careful analysis of the applicable legal principles convinces us that respondents' position is well taken, and as a consequence the rulings of the trial court must be upheld.

■ It is, of course, a recognized general proposition that a public officer or employee who serves at the pleasure of the appointing authorities may be terminated without cause and without notice and hearing (*Bogacki* v. *Board of Supervisors, supra* at p. 782; *Ball* v. *City Council, supra* at p. 141; *Humbert* v. *Castro Valley County Fire Protection Dist.* (1963) 214 Cal.App.2d 1, 13 [29 Cal.Rptr. 158]; *Cozzolino* v. *City of Fontana* (1955) 136 Cal.App.2d 608, 611 [289 P.2d 248]; *Hackler* v. *Ward* (1951) 105 Cal.App.2d 615, 616-617 [234 P.2d 170]). To this general rule, however, there are several exceptions. Thus, it is firmly established that even if a public employee serves at the pleasure of the appointing authorities, he may not be dismissed from his employment for the exercise of his First and Fourteenth Amendment rights absent a showing that the restraints which the employing body would impose on the aforementioned constitutional rights are justified by a compelling public interest (*Bogacki* v. *Board of Supervisors, supra* at p. 778; *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 503-505 [55 Cal.Rptr. 401, 421 P.2d 409]; *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697]), and in such instances the employee is entitled to a pretermination hearing (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 569-573 [33 L.Ed.2d 548, 556-559, 92 S.Ct. 2701]; *Perry* v. *Sindermann* (1972) 408 U.S. 593, 599 [33 L.Ed.2d 570, 578-579, 92 S.Ct. 2694]). The right to a hearing must likewise be afforded when a public officer employed at will claims that he was dismissed because he exercised a statutory right to join and participate in the activities of an employee organization (*Ball* v. *City Council, supra* at pp. 142-144; see also: *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203, 217 [13 L.Ed.2d 233, 242, 85 S.Ct. 398, 6 A.L.R.3d 1130]). Finally, the right to a pretermination hearing may be founded on the existence of rules, regulations, understandings or practices, promulgated, fostered and carried out by agency officials (*Perry* v. *Sindermann, supra* at p. 602 [33 L.Ed.2d at p. 580]; *Perea* v. *Fales* (1974) 39 Cal.App.3d 939 [114 Cal.Rptr. 808]).

■ In discussing the causes in a reverse order we conclude that under the circumstances here present respondents were entitled to a pretermination hearing on each of the aforestated grounds. First, the Manual,

which constituted a part of the department rules and regulations, delegated to the Chief of Police the power to prescribe the rules necessary for the operation of the department.[2] The Manual likewise set out that the Chief of Police shall have the control, management and direction over all members of the department with exclusive power to assign any member to any detail within the department or detail them to any public service. Even more significantly, the Manual provided in explicit terms that the employees of the police department were subject to discipline, including dismissal from employment, only for cause and after a hearing. Section 200.5 of the Manual read in part that *"The Police Chief may* reprimand, *relieve from duty,* punish or suspend from service, *any member of the Police Department for cause* in such a manner as is provided by the Police Department Rules and Regulations, Ordinances or Resolutions of the City of Healdsburg and Regulations as may be now or hereafter in force or effect, with the approval of the City Administrator and/or the City Council." (Italics added.) Chapter III, section I of article III, likewise put forth in pertinent portion that *"Every* member or *employee of the Police Department, shall be subject to* reprimand, suspension, reduction in rank, deduction in pay or *dismissal from the Police Department and from the service of the City,* according to the nature of the offense, for violation of any of the rules, regulations or general orders of the Police Department, now in force, or that may be hereafter issued, *after having been given an opportunity to be heard in his or her own defense."* (Italics added.) It follows that respondents were entitled to a hearing on double grounds: the Manual expressly so provided, and in addition the right to notice and hearing arose as a matter of law from the provision which authorized the dismissal of employees only for cause (cf. *Perea* v. *Fales, supra*).

■ Secondly, respondents properly alleged[3] and adduced evidence at the trial showing that their discharge violated several provisions of the

---

[2]Section 200 of the Manual provides that "The Chief of Police shall be the Chief executive officer of the Police Department. He shall be responsible for the execution of all laws and ordinances and the rules governing the Police Department. He shall have the power to promulgate such orders to the Police Force as he may deem proper from time to time, said orders to be written or printed or issued orally." Section 200.2 of the Manual states that "The Chief of Police may prescribe rules and regulations as may be necessary for the efficient operation of the Department."

[3]The petition for writ of mandate avers in part that "C. 1. Respondents City Council and City Manager committed a prejudicial abuse of discretion in that said respondents acted as alleged in Paragraphs VIII. A. and B. and failed to proceed in a manner required by law.

"2. *Respondents' actions are contrary to law in that they are in violation of the provisions*

MMB Act which accords public employees the right to join labor organizations (Gov. Code, § 3502; *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158]) and prohibits public agencies from interfering with the exercise of the organizational and representational rights of their employees (Gov. Code, § 3506; see also Lab. Code, § 922; *Ball* v. *City Council, supra*). While failing to make specific findings of fact to that effect, the trial court in its memorandum decision concluded that "there was substantial evidence elicited at the hearing to support petitioners' contention that their dismissal resulted from their attempt to exercise such [organizational and representational] right."

 Thirdly, as an alternative cause for issuance of the peremptory writ of mandate, it was also claimed that appellants' failure to provide notice and hearing violated respondents' constitutional right to due process guaranteed by the Fourteenth Amendment to the Constitution. It is now well settled that the requirements of procedural due process apply to the deprivation of liberty and property protected by the Fourteenth Amendment. When protected property interests are implicated, the right to some kind of prior hearing is a constitutional requisite. As emphasized in cases, the property interests which are subject to procedural safeguards are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, i.e., statute or regulation (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774]; *Board of Regents* v. *Roth, supra* at pp. 569-570, 577 [33 L.Ed.2d at pp. 556-557, 560-561]; *Perry* v. *Sindermann, supra* at p. 601 [33 L.Ed.2d at pp. 579-580]). It follows that the cited provisions of the Manual, a de-

of the 'Meyers-Milias-Brown Act' (Government Code §§ 3500-10), including but not limited to the following respects:

"(a) Respondents have refused to meet and confer in good faith (in fact, they have refused to meet and confer at all with the Healdsburg Police Officers Association) on the legitimate matters of labor dispute alleged herein and on other matters effecting the rights and working conditions of petitioners herein and their Association.

"(b) *Respondents' actions* as alleged herein *have been part and parcel of a concerted effort to destroy and/or prevent the formation of the Healdsburg Police Officers Association and any other effective organizing efforts on behalf of petitioners* herein.

"(c) Respondents have not followed any of the provisions of said Act to effectuate reasonable communication and reasonable working conditions with petitioners herein.

"3. *Respondents* themselves and by and through their agents and employees and those working in concert with them *have taken actions in violation of the mandate of Labor Code § 922 which prohibits interference by management with the organizational rights of petitioners* and their Association." (Italics added.)

partment regulation, supports respondents' right to a hearing not only as a matter of statute, but also as a matter of constitutional right.

Appellants' argument that the Manual in dispute was unenforceable and legally void because it was not adopted by the city council and ran counter to several provisions of the Government Code (e.g., the rule that appointive employees of a general law city serve at the pleasure of the city council which can be changed only by ordinance (Gov. Code, §§ 36506, 45001), the authority to hire and fire city employees is delegated to the city manager (Gov. Code, § 34856)) is untenable and must be rejected for two main reasons.

One, as pointed out earlier, the Manual by express language delegated the power of discipline, including dismissal, to the chief of police who could exercise his power only for cause and after a hearing at which the employee affected was given the opportunity to prepare his own defense against the charges. ■ The Manual is replete with provisions that direct and command that employees of the police department familiarize themselves with its contents, understand and follow them.[4] In addition, at the inception of their employment police officers were obligated to sign a declaration for inclusion in the personnel file which stated as follows: "I have received a copy of the General Order Manual. This will acknowledge that I have read the Manual and fully understand the meaning and intent of the policies and procedures outlined therein."

We believe the foregoing excerpts coupled with other parts of the record support the validity and enforceability of the Manual under the theory of equitable estoppel. The record leaves no doubt that all elements of equitable estoppel are present in the case at bench. Thus, it is not disputed that even if the city council did not adopt the Manual, it at least did have knowledge of its existence. Furthermore, the Manual not only intended, but also directed that its provisions be acted upon by

---

[4]The illustrative portions of the Manual read as follows:

"Every member will be furnished a copy of this Manual and is hereby directed to keep it in good condition and make such additions and deletions as ordered with such changes becoming effective when issued.

"Each member of the Department is directed to become thoroughly familiar with the contents of this Manual. Deviations from the Manual may be issued by the Chief of Police as may be necessary."

"All members of the Police Department shall familiarize themselves with the contents of these rules and regulations so that they may thoroughly understand the rules, regulations and instructions contained therein and conduct themselves accordingly . . . ."

"Members of the Department will become thoroughly familiar with the provisions of this manual and shall conform to and abide by them."

respondents. In fact, the Manual made it a police duty to obey all the provisions set forth therein. The forced reliance thereon and the resulting injury to respondents have also been established as a matter of record. It is blackletter law that where justice requires it, the doctrine of equitable estoppel may be invoked against a municipality or other governmental agency (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423]; *Phillis* v. *City of Santa Barbara* (1964) 229 Cal.App.2d 45, 57 [40 Cal.Rptr. 27]). This doctrine, of course, precludes the consenting or acquiescing party from disputing the validity of acts which were beyond the legitimate powers of the parties when done pursuant to, or in reliance upon, such consent or acquiescence (28 Am.Jur.2d, § 51, p. 662). Therefore appellants' claim that the enactment of the Manual constituted an ultra vires act automatically fails. ■ We are likewise at a loss to discern any substance to appellants' contention that the theory of equitable estoppel may not be relied upon by respondents because it was not raised in the proceedings below. It is axiomatic that although estoppel is generally a question of fact, where, as here, the evidence is not in conflict and is susceptible of only one reasonable inference, the existence of estoppel becomes a question of law (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 581 [108 Cal.Rptr. 293]). Moreover, it is indisputable that by a summary discharge appellants here denied respondents the right to a hearing which might have served to ferret out the actual reasons of dismissal and would have provided respondents the opportunity to counter the charges and to raise and prove the elements of equitable estoppel. Under these circumstances, it would be unfair indeed to deprive respondents of this equitable defense.

Two, appellants' contention must be rejected upon the further grounds that respondents' right to a hearing has accrued on the independent basis of the violation of the employees' organizational statute and also as a matter of constitutional law. ■ As discussed before, property interests subject to procedural due process protection are not limited by a few rigid, technical forms. Property within the meaning of the Fourteenth Amendment denotes a broad range of interests that are or can be secured by rules or mutually explicit understandings—such as those presented in the instant case.

■ Appellants' alternative argument that the Manual in controversy was not properly considered by the trial court because a new manual promulgated in 1974 was in effect which by silence repealed the hearing

provisions of the former Manual is also ill-founded. As recently outlined by our Supreme Court, as a general rule statutes are not to be given retroactive effect. Application of a statute to destroy interests which matured prior to its enactment is generally disfavored and, absent specific legislative provision for retroactivity, it would be manifestly unjust to interpret a new enactment in a manner that would strip the petitioner of his previously acquired status (*Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 830 [114 Cal.Rptr. 589, 523 P.2d 629]). It goes without further discussion that the principles stated in *Balen* apply to the instant case where the new manual failed to provide for retroactivity and where respondents had previously acquired valuable procedural and substantive rights under the former Manual.

We are satisfied that the authorities cited by appellants are distinguishable from the case at bench. Thus, *Bogacki v. Board of Supervisors, supra,* upon which appellants primarily rely, is at variance with the case at hand in various respects. In *Bogacki,* there were no specific rules and regulations expressly granting the employee the right to a hearing before his dismissal; the discharged employee was nevertheless afforded a hearing before the county board of review; and the case was determined on the basis that the petitioner did not sustain the burden of proof that he had been discharged for the exercise of his First Amendment rights as he claimed. The other case, *Hackler v. Ward, supra,* also presents a different factual situation. In *Hackler,* the court merely held that a contract of employment for a fixed term was invalid as against the state law which granted the general law city the power to terminate the employment at pleasure. By contrast, in the instant case the validity of the Manual is not predicated on a contractual theory but, rather, on the basis of equitable estoppel which, as spelled out before, runs counter to and abrogates the ultra vires doctrine. Besides, in the light of the recent development and enlargement of constitutional principles relating to procedural due process (*Arnett v. Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]; *Board of Regents v. Roth*; *Perry v. Sindermann*; *Skelly v. State Personnel Bd.,* all *supra*), the continued validity of *Hackler* is highly questionable.

Appellants' second major attack on the trial court's rulings is founded on a series of alleged procedural errors. Of these only two contentions require consideration: one, that the peremptory writ of mandate and the contempt orders issued in its enforcement cannot stand because the writ was not preceded or followed by a judgment; two, that even if the peremptory mandate may be considered as a judgment, it should be

reversed because, despite appellants' request, the trial court failed to make the necessary findings of fact as prescribed by section 632 of the Code of Civil Procedure and rule 232 of the California Rules of Court.

■ As far as appellants' first argument is concerned, we note that by statutory definition "A judgment in a special proceeding is the final determination of the rights of the parties therein" (Code Civ. Proc., § 1064). In the case at bench the writ of mandate contained the final determination of the rights of the litigants; therefore, it constituted a judgment within the meaning of the statute. In accordance therewith Judge Keane, who conducted the contempt proceedings, explicitly found that the writ itself was the judgment. But, in addition, in opposing ·respondents' motion to dismiss the appeal, appellants themselves took the position that the writ should be regarded as the judgment rendered in the case. Under these circumstances appellants' inconsistent claim raised on appeal cannot be heard.

■ In reply to appellants' second contention, we observe that as a general rule findings of fact are required in a mandamus proceeding if one of the parties requests such findings (*Healy* v. *Stationers Corp.* (1964) 228 Cal.App.2d 601, 603 [39 Cal.Rptr. 679]). However, it is equally well settled that where the only question submitted to the court is a question of law, findings are unnecessary (*Applegate Drayage Co.* v. *Municipal Court* (1972) 23 Cal.App.3d 628, 635 [100 Cal.Rptr. 400]; *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 844 [86 Cal.Rptr. 133]). The material issues in the case at bench are undisputed. Appellants concede that respondents were discharged in a summary fashion without notice and hearing. The contents of the Manual according a right to hearing is likewise beyond controversy. The issues here presented, therefore, were legal questions which could be resolved without specific findings of fact and conclusions of law.

■ The remaining contentions of the parties require just a short discussion. Appellants' assertion that ordering reinstatement with back pay without the requisite offset compensation was erroneous is not borne out by the law or by the record. It is axiomatic that the burden of proof is on the party whose breach caused damage, to establish matters relied on to mitigate damage (*Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 654 [160 P.2d 804]). Appellants here failed to carry the burden of proof by showing that during their absence respondents did make or could have made earnings which could have been considered in mitigation of damages. Respondents' claim to attorneys' fees is also

subject to summary disposition. Pursuant to Government Code, section 800, in a civil action to review an administrative determination by a public entity, the court may award reasonable attorneys' fees only if the administrative decision resulted from arbitrary or capricious action of a public entity (*Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 61 [113 Cal.Rptr. 916]). The case at bench reveals a bona fide legal dispute and there is no showing of arbitrariness or caprice on the part of appellants.

 We do agree with appellants, however, that the trial court erred in ordering any pretermination hearings to be conducted before a hearing officer on the staff of the Office of Administrative Procedure of the State of California and in accordance with the procedures outlined in chapter 5 of division 3 of title 2 of the Government Code.

The nature and form of the hearing is an issue which was not litigated below. The single issue was simply whether respondents were entitled to a pretermination hearing.

The judgment (writ of mandate) is modified by striking the first two sentences of paragraph 2) of page 2 thereof. As so modified, the judgment and the orders of contempt issued thereon are, and each is, affirmed.

Taylor, P. J., and Rouse, J., concurred.