[No. F005803. Fifth Dist. Mar. 4, 1987.]

SHERILYN GRIMSLEY et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF MUROC JOINT UNIFIED SCHOOL
DISTRICT et al., De fendants and Respondents.

COUNSEL

Charles R. Gustafson, Kirsten L. Zerger, A. Eugene Huguenin, Jr., and Rosalind D. Wolf for Plaintiffs and Appellants.

Frank J. Fekete, Peter C. Carton, Joanne A. Velman, Stephen L. Hartsell, Dwaine L. Chambers and Roger R. Grass for Defendants and Respondents.

OPINION

FRANSON, Acting P. J.—

STATEMENT OF THE CASE

This appeal is from a judgment of the Kern County Superior Court denying appellants' petition for writ of mandate. Appellants, two first-year probationary teachers, allege they were unlawfully terminated from their employment by respondent school board without a statement of reasons and without a hearing. They seek reinstatement to second year probationary status and backpay.

Specifically, appellants contend that under the Hughes-Hart Educational Reform Act of 1983 (Stats. 1983, ch. 498) they could only be terminated for cause or for unsatisfactory performance as teachers; hence, they were entitled to a statement of reasons for their dismissal and the opportunity of a hearing and appeal to the governing board of their school district. Respondents counter by arguing that although the law before the 1983 amendments to the Education Code would have required the respondent board to show cause for terminating appellants' employment, the 1983 legislative amendments changed the procedural rules governing the reemployment of first and second year probationary teachers so that appellants could be terminated at the end of their first year of service without any showing of cause.

While the answer to the question posed by the parties' contentions is difficult to reach because of the opaque language of the 1983 amendments to the Education Code, we conclude that respondents' argument is the more persuasive. The Legislature intended by the 1983 act to eliminate the

requirement that the governing board's determination not to reemploy a probationary teacher for the ensuing school year could be for cause only. For probationary teachers hired during or after the 1983-1984 fiscal year, the right to reemployment for the ensuing year is subject to termination without cause at any time before March 15 of the second consecutive year of employment. We affirm the trial court's ruling denying the writ of mandamus.

## STATEMENT OF FACTS

Appellants Sherilyn Grimsley and James E. Cordell were hired by respondent Muroc Joint Unified School District as first-year probationary teachers commencing with the 1983-1984 school year. Both received satisfactory performance evaluations during the year; however, Cordell's evaluation indicated he needed "improvement" in several areas.

On April 23, 1984, both appellants received written notice from the district's superintendent that the governing board of the district had decided not to rehire them for the following school year and that their employment would therefore end as of June 30, 1984. Each appellant requested a statement of reasons for nonreelection and a hearing to determine if there was cause for their nonretention; the requests were denied.

Appellants were dismissed from their jobs as of June 30, 1984, as scheduled, and two replacement teachers were employed for the following school year.

## DISCUSSION

I. *Appellants' nonretention complied with the Education Code.*

Our task is to interpret selected provisions of the Education Code as amended in 1983. ■ In doing this, we are required to follow certain principles: "In the construction of a statute . . . , the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." (Code Civ. Proc., § 1858.) "Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] ■ . . . 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*Neumarkel* v. *Allard* (1985) 163 Cal.App.3d 457, 461 [209 Cal.Rptr. 616].)

Before 1983, Education Code section 44949, subdivision (d), provided in relevant part: "The governing board's determination not to reemploy a

probationary employee for the ensuing school year shall be for cause only. The determination of the governing board as to the sufficiency of the cause ... shall be conclusive, but the cause shall relate solely to the welfare of the schools and pupils thereof. ..."

In 1983, subdivision (d) was entirely deleted from Education Code section 44949. Although the substance of the deleted language is included in amended Education Code section 44948.5, subdivision (e), that section is restricted on its face to teachers whose probationary period commenced *before* the 1983-1984 fiscal year.

■ Appellants seek to overcome the consequence of this legislative dele-tion of the provision guaranteeing probationary employees continued employment absent a showing of cause for their nonreemployment by arguing the applicability of amended Education Code section 44948.3. This section provides: "(a) First and second year probationary employees may be *dismissed during the school year* for unsatisfactory performance determined pursuant to Article 11 (commencing with Section 44660) of Chapter 3, or for cause pursuant to Section 44932. Any dismissal pursuant to this section shall be in accordance with all of the following procedures:

"(1) The superintendent of the school district or the superintendent's designee shall give 30 days' prior written notice of dismissal, not later than March 15 in the case of second year probationary employees. The notice shall include a statement of the reasons for the dismissal and notice of the oppor-tunity to appeal. In the event of a dismissal for unsatisfactory performance, a copy of the evaluation conducted pursuant to Section 44664 shall accom-pany the written notice.

"(2) The employee shall have 15 days from receipt of the notice of dismissal to submit to the governing board a written request for a hearing. The governing board may establish procedures for the appointment of an administrative law judge to conduct the hearing and submit a recommended decision to the board. The failure of an employee to request a hearing within 15 days from receipt of a dismissal notice shall constitute a waiver of the right to a hearing.

"(b) The governing board, pursuant to this section, may suspend a proba-tionary employee for a specified period of time without pay as an alternative to dismissal.

"(c) This section applies only to probationary employees whose proba-tionary period commenced during the 1983-84 fiscal year or any fiscal year thereafter, and does not apply to probationary employees in a school district

having an average daily attendance of less than 250 pupils." (Italics added.) This statute authorizes dismissals of probationary teachers during the school year for either "unsatisfactory performance" or for "cause." The dismissals require a 30-day prior written notice, not later than March 15 in the case of a second-year probationary teacher. The notice shall include a statement of the reasons for the dismissal and notice of the opportunity to appeal.

The problem with appellants' argument is that section 44948.3 on its face simply does not apply to a board's decision not to reemploy a probationary teacher. The statute is limited to dismissals "during" the school year. If appellants were "dismissed," it was at the end of the school year. Appellants' argument that because a school year is not merely that portion of the calendar year when classes are held but is a full 365-day year beginning July 1 and ending June 30 so that a dismissal effective June 30 is "during the school year" is illusional. Realistically, a school board will use Education Code section 44948.3 when it wishes to remove a probationary teacher from the classroom as soon as possible either by way of suspension for a specified period of time without pay or by outright dismissal. The clear import of the statute is that the dismissal becomes effective 30 days after the notice is given, subject to the hearing and appeal procedures if requested by the teacher. Thus, the time procedures governing dismissals during the school year are incompatible with the concept of year-end dismissals triggered by a notice of nonreelection. For example, a notice of dismissal on March 15 under section 44948.3 would result in dismissal on April 14 (30 days later) whereas a notice of nonreelection on March 15 would result in termination of employment effective June 30. We conclude, therefore, that section 44948.3 does not apply to the notice procedure for nonretention of probationary teachers for the ensuing year.

█ The Legislature for more than 50 years has drawn a sharp distinction between the procedures for dismissing probationary teachers during the school year and the procedures for not reemploying a probationary teacher for an ensuing school year. As we shall explain, the Legislature appears to have preserved the distinction by the 1983 amendments.

Education Code section 44882 states the tenure requirements for probationary teachers. Before the 1983 amendments, it provided that after completion of three consecutive school years of employment, a teacher who is reelected for the next succeeding school year shall at the commencement of the succeeding year be classified as and become a permanent employee of the district. In 1983, section 44882 was amended by adding a new tenure provision for probationary teachers hired during or after the 1983-1984 fiscal year. Subdivision (b) of Education Code section 44882 provides: "(b) Every employee of a school district of any type or class having an average daily

attendance of 250 or more who, after having been employed by the district for *two* complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district.

"The governing board shall notify the employee, on *or before* March 15 of the employee's second complete consecutive school year of employment by the district . . . , of the decision to reelect or not reelect the employee for the next succeeding school year to such a position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year.

"This subdivision shall apply only to probationary employees whose probationary period commenced during the 1983-84 fiscal year or any fiscal year thereafter." (Italics added.)

This statute evidences the legislative intent to provide a separate procedure for the nonreemployment of probationary teachers apart from the procedures governing midyear dismissals under Education Code section 44948.3. Education Code section 44882 as amended in 1983 first reduces the teacher's probationary term from three to two years and then provides a mechanism for giving notice to the teacher of the board's decision not to reemploy him or her for the third year, i.e., the board shall notify the teacher on *or before* March 15 of the second year of employment of its decision to reelect or not reelect the teacher for the next succeeding year. Also, a broad interpretation of the statute permits notice of nonreelection to be given to the probationary teacher any time during the first year, i.e., *before* March 15 of the second year of employment. If notice of the board's decision not to reelect does not come before March 15 of the second year, tenure is conferred.

Appellants argue that Education Code section 44882, subdivision (b), must be limited in its applicability to second-year teachers because the section makes "absolutely no" reference to the nonreemployment of first-year probationary teachers. Although appellants' argument is correct literally, it may be rejected for two reasons. First, the section talks about tenure to the probationary teacher after completion of *two* complete consecutive school years; this topic necessarily encompasses first-year employment. Second, given an expansive interpretation, the language "on *or before* March 15" of the employee's second year brings a first-year nonretention notice

within the purview of the section, i.e., as permitting notice of nonreemployment at *any time* before March 15 of the second year.[1]

Even if it should be concluded that Education Code section 44882, subdivision (b), does not apply to the nonretention of a first-year probationary teacher, this would mean only that there is no statute governing first-year nonretention notices, a result which would leave the respondent board free to terminate appellants' employment after the first year under basic principles of contract law. (Cf. *Main* v. *Claremont Unified School Dist.* (1958) 161 Cal.App.2d 189, 197-198 [326 P.2d 573].) Because appellants were hired for only one year, they have no contractual right to employment beyond the first year.

We have examined the legislative history of the 1983 amendments to the Education Code and find nothing decisive of the legislative intent concerning nonretention notices to first-year probationary teachers.

We conclude therefore that Education Code section 44882, subdivision (b), rather than Education Code section 44948.3, governs the notice procedure for nonretention of probationary teachers. If, however, section 44882, subdivision (b) does not govern, there is no statutory right to notice of nonreemployment, and appellants' rights to retention are governed by the contract of employment.

We recognize the argument that unfairness may result to a probationary teacher who is notified of his or her nonreelection for a second year or third year (prior to March 15 of the second year) without a statement of reasons and without any redress by way of administrative hearing or appeal to the board. This can have an adverse consequence to an aspiring teacher seeking employment with other school districts. However, this problem is a policy matter properly addressed to the Legislature. As we have explained, our task is to take the statutes as they read and to ascertain the legislative intent from the language used. This we have done.

---

[1]Although this broad interpretation of Education Code section 44882, subdivision (b), would permit a first-year probationary employee to be notified on June 29 that his or her employment would end on June 30, the end of the school year, such a notice might well be deemed unreasonable, particularly where the teacher could show reliance upon satisfactory performance evaluations from the district in not seeking other employment. We cannot imagine a school district giving such short notice of its determination of nonretention to a first-year probationary teacher.

II. *Appellants' nonreelection did not deprive them of property right without due process of law.*

Appellants argue that their nonreelection was a deprivation of property violative of their due process rights under the California and United States Constitutions.

■ Appellants first contend that the trial court improperly relied on their status as "probationary" instructors in finding no property interest in their positions. They point out that *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701], on which the court below relied, specifically stated that a nontenured teacher "with a clearly implied promise of continued employment" was entitled to due process protection on dismissal from his or her job. (*Id.* at p. 577 [33 L.Ed.2d at p. 561].)

This argument is correct as far as it goes, and the trial court was indeed wrong if it relied on the label "probationary" in reaching its decision. However, *Roth* also holds by implication that a nontenured, or probationary, teacher *without* such a promise of continued employment is *not* entitled to benefit from due process protection, as no property interest has been conveyed to such a teacher. The United States Supreme Court recently recognized this fact again: " 'While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.' " (*Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 541 [84 L.Ed.2d 494, 503, 105 S.Ct. 1487], quoting *Arnett* v. *Kennedy* (1974) 416 U.S. 134, 167 [40 L.Ed.2d 15, 40-41, 94 S.Ct. 1633](conc. opn. of Powell, J.).)

■ As the high court observed in *Board of Regents* v. *Roth, supra,* 408 U.S. 564, the property interests giving rise to due process protection "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (*Roth, supra,* at p. 577 [33 L.Ed.2d at p. 561]; see also *Skelly* v. *State Personnel Bd.* (1975) 15Cal.3d 194, 206-207 [124 Cal.Rptr. 14, 539 P.2d 774].) In other words, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already acquired* in specific benefits." (*Roth, supra,* 408 U.S. at p. 576 [33 L.Ed.2d at p. 560], italics added; *Skelly, supra,* 15 Cal.3d at p. 206.)

The question presented, then, is whether appellants were granted any property interest in their jobs, either by statute or through their employment

contracts or by other representations made to them. Because the appellate record is devoid of any evidence that might suggest that appellants were contractually hired for any term beyond the first school year or that any representations were made to them from which they could be assured of continuing employment beyond the first year except for a showing of cause, we must turn to the statutory authority discussed under issue I, *ante.* If the statutes grant a property interest, of course, a reversal must follow, since the procedure used by the district in removing appellants from their positions would then be plainly violative of due process.

 The statutes that appellants claim create a property interest do not do so. For example, appellants claim that section 44955, subdivision (a), provides for such an interest. That subdivision provides that "no probationary employee shall be deprived of his or her position for cause other than as specified in Sections 44948 to 44949, inclusive." Appellants maintain that the meaning of this provision is that probationary employees can only be terminated for cause. What the section says is that dismissals for cause are governed by Education Code sections 44948 to 44949, inclusive; what it does not say is that "cause" is the *only* reason for dismissal. Section 44955 itself provides another reason, the reduction of faculty positions due to uncontrollable factors such as changes in state law or in district size. Furthermore, the language that once expressly stated that decisions not to reemploy a probationary teacher must be for cause only (former § 44949, subd. (d)) is no longer in any code section applying to teachers, such as appellants, whose probationary period started in 1983-1984 or later. (Cf. Ed. Code, § 44948.5, subds. (a), (e).) We note at this point the Senate Education Committee Report on Senate Bill No. 813 which indicates that the 1983 statutory scheme would allow discretionary dismissal of probationary teachers "on the basis of district-determined criteria"—as opposed to the pre-1983 scheme, which allowed dismissal of probationary teachers for cause only, whether during the school year or at the end of the year. (See former § 44948, § 44949, subd. (d).)

Appellants argue that probationary teachers do not serve at the pleasure of the governing board. They point to section 44948.3, subdivision (a), which limits dismissal of probationary teachers *during the school year* to dismissals for "unsatisfactory performance . . . or for cause pursuant to Section 44932." But appellants fail to adequately distinguish *Board of Regents* v. *Roth, supra,* 408 U.S. 564, where the teacher served under a similar statutory scheme: dismissal during the year for cause only, nonrenewal at the end of the year at the employer's discretion. The *Roth* court found that the teacher had an interest in his position for the duration of the academic year, but "no interest in re-employment for the next year." (408 U.S. at p. 578 [33 L.Ed.2d at p. 561].)

■ True, in *Roth* the employer's right to not rehire without a hearing was expressly set forth in the statutes, and here, the procedure is not spelled out. But it is not required that the Legislature expressly *exclude* a property interest from appellants' job description; the question rather is whether the statutory scheme *creates* a property interest. No more of a property interest is implied by the Legislature's calculated silence here than was created by the express legislation in *Roth*.

Appellants cite *Carroll* v. *California Horse Racing Bd.* (1940) 16 Cal.2d 164 [105 P.2d 110]. In *Carroll,* the statute in question addressed both the removal of board members and the revocation of horse trainers' licenses. "Cause" was listed as a prerequisite for both actions, but an express notice and hearing provision was made only for the removal of a board member. The board argued that the statute reflected a legislative intent not to provide notice and hearing procedures for license revocations. The Supreme Court disagreed, holding that "statutory provisions requiring 'cause' for revocation of licenses or removal of officers carry with them by implication the right to notice and hearing." (*Id.* at p. 168.) In the instant case, of course, we have found no statutory "cause" requirement for nonretention of probationary teachers.

Appellants further argue that the trial court improperly relied on the statutory procedures established to deprive them of their positions to determine the limits of their property interests in their jobs. This "bitter with the sweet" approach to determining property interests (*Arnett* v. *Kennedy, supra,* 416 U.S. at pp. 152-154 [40 L.Ed.2d at pp. 32-33]) was recently condemned by the Supreme Court. In *Cleveland Board of Education* v. *Loudermill, supra,* 470 U.S. 532, the court expressly rejected the view set forth by the plurality in *Arnett.* (470 U.S. at p. 540 [84 L.Ed.2d at p. 502, 105 S.Ct. at p. 1492.)

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. 'Property' cannot be defined by the procedures provided for its deprivation .... [¶] In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due.' " (*Id.* at p. 541 [84 L.Ed.2d at p. 503].)

The difficulty with applying *Loudermill* to these facts is that in *Loudermill* the statutory structure unquestionably conferred a property interest. (See *id.* at pp. 538-539 and fn. 5 [84 L.Ed.2d at pp. 512-514].) Here, in contrast, the existence or nonexistence of a statutory property interest is the crux of the case. If the Education Code conveyed to appellants no interest in a second

probationary year of employment as we have found, *Loudermill* becomes inapposite.

The judgment is affirmed.

Hamlin, J., and Scott (C. F.), J.,* concurred.

Appellants' petition for review by the Supreme Court was denied May 20, 1987.

---

*Assigned by the Acting Chairperson of the Judicial Council.