[No. C054780. Third Dist. Feb. 1, 2008.]

PATRICIA VASQUEZ, Plaintiff and Appellant, v.
HAPPY VALLEY UNION SCHOOL DISTRICT et al., Defendants and
Respondents.

■■■■■■■■■■■■■■■■■■■■

## Counsel

Donald A. Selke, Jr., for Plaintiff and Appellant.

Halkides, Morgan & Kelley and John P. Kelley for Defendants and Respondents.

## Opinion

**NICHOLSON, J.**—The Happy Valley Union School District (District) terminated plaintiff's employment as a substitute teacher in the 2005–2006 school year when she refused to accept being reclassified as a temporary teacher. She had taught for the District the previous two years as a substitute and temporary teacher, and she wanted a more permanent classification. She petitioned for a writ of mandate compelling the District to reinstate her and provide due process, claiming she was entitled to permanent employment based on statutory grounds. The trial court denied the petition. We affirm the trial court's judgment, but we do so on a different basis.

## STATUTORY BACKGROUND

Before reciting the facts, we review California's civil service system for public school teachers with particular attention to its classifications for teachers and the school districts' authority to dismiss them.[1]

■ The Education Code classifies California teachers into four different categories: permanent (tenured), probationary, substitute, and temporary. "In the case of permanent and probationary employees, the employer's power to terminate employment is restricted by statute. Substitute and temporary employees, on the other hand, fill the short range needs of a school district and generally may be summarily released. [Citation.]" (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 504–505 [204 Cal.Rptr. 711, 683 P.2d 710].)

■ Permanent teachers are those who a school district has employed for two complete consecutive school years as probationary teachers and who have been "reelected" (retained) for the next succeeding school year. (§ 44929.21, subd. (b).) A school district may terminate a permanent teacher only for misconduct or due to a reduction in the overall number of teachers. (§§ 44932, 44933, 44955.)

■ The classification of "probationary" is the default classification. School districts classify all teachers as probationary who are not otherwise required by the code to be classified as permanent, temporary, or substitute. (§ 44915; *Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1280 [52 Cal.Rptr.3d 486] (*Bakersfield*).) "The probationary plan was provided so that the school board would have an opportunity to determine, before a teacher should be given a lifetime position in teaching children of the district, whether or not that teacher would be thoroughly satisfactory." (*Wood v. Los Angeles City School Dist.* (1935) 6 Cal.App.2d 400, 402–403 [44 P.2d 644].)

■ Probationary teachers have limited protections against dismissal. School districts may dismiss a probationary employee during the school year only for cause or unsatisfactory performance. (§ 44948.3.) However, a school district can terminate a probationary teacher's employment effective the end of the teacher's yearly contract without cause. (*California Teachers Assn. v. Mendocino Unified School Dist.* (2001) 92 Cal.App.4th 522, 526–527 [111 Cal.Rptr.2d 879].)

---

[1] We use the term "teacher" to refer to those teachers who are "certificated" employees of school districts, as that term is defined in the Education Code. (Ed. Code, § 44006.) (Further undesignated section references are to the Education Code.) Also, the Education Code often distinguishes between school districts with 250 students or more, and districts with less than 250 students. Our discussion here concerns the former.

■ To effectuate this no-cause termination, the school district must give the probationary teacher timely notice of its decision not to reemploy the teacher. If the district decides not to reemploy the teacher effective the end of the teacher's first year of probationary status, the district may give notice at any time during the first year of employment. (*Grimsley v. Board of Trustees* (1987) 189 Cal.App.3d 1440, 1447–1448 [235 Cal.Rptr. 85].) If the district decides not to reemploy the teacher effective the end of the teacher's second year of probationary status, the district must give notice by March 15 of that year. (§ 44929.21, subd. (b).) If the district fails to give the second-year probationary teacher timely notice, the teacher is deemed to be reemployed for the next succeeding school year and by law becomes a permanent employee. (*Ibid.*)

■ A substitute teacher traditionally has been defined as being "employed from day to day to serve at the option of the school district in the absence of the regular teacher." (*Wood v. Los Angeles City School Dist., supra,* 6 Cal.App.2d at p. 402; see also § 44918, subd. (d).) The Education Code requires a school district to classify as substitute employees those teachers employed "to fill positions of regularly employed persons absent from service." (§ 44917.) The code also states that a school district "may employ such substitute employees of the district as it deems necessary . . . ." (§ 45030.) A school district may dismiss a substitute teacher at any time without cause. (§ 44953.)

■ The classification of "temporary" covers a variety of scenarios. A temporary teacher is, among other definitions, a teacher hired by the district for a semester or a complete school year to replace a regular teacher who has been granted leave for that time or is experiencing long-term illness. (§ 44920.) A teacher may also be classified as temporary where the teacher is working on so-called categorically funded projects. (§ 44909.)

Temporary teachers have slightly more employment rights than substitute teachers. School districts may dismiss a temporary teacher without cause at any time prior to the teacher serving at least 75 percent of the school year. After that time, the district must notify the temporary teacher before the end of the school year that it has not retained the teacher for the following year. (§ 44954.)

■ If the temporary teacher works for at least 75 percent of the school year, and the district rehires the teacher as a probationary employee for the succeeding year, the year of temporary service is reclassified as a year of probationary service for purposes of acquiring permanent status. (§§ 44909, 44918, subd. (a).)

Indeed, such a temporary teacher must be rehired by the district for the following school year as a probationary employee if the district has a vacant position needing to be filled (one not held by a permanent or probationary teacher on leave), so long as the district has not first dismissed the temporary teacher pursuant to section 44954. (§§ 44918, subd. (b), 44920.)

■ School districts must classify their employees into one of these four classifications at the time of employment. The district must give each new employee a written statement indicating the employee's classification no later than the first day of paid service. If the district hires a teacher as a temporary employee, the statement must clearly indicate the temporary nature of the employment and the length of the employment term. If the statement does not indicate the temporary nature of the employment, or if the statement is untimely, the employee is deemed to be a probationary employee. (§ 44916; *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 917–920 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

We now turn to the facts.

### FACTS

*2003–2004 school year*

Plaintiff's relationship with the District began on October 8, 2003, when the District hired her as a substitute teacher to teach a reading class for 2.5 hours per day. Her status changed when, by letter dated November 6, the District employed plaintiff as a temporary teacher on a month-to-month basis to continue teaching the same class. Her compensation was funded by a categorically funded project. The District timely notified her of her classification as a temporary teacher.

The District chose not to retain plaintiff for the following school year. It timely informed her of that decision by written notice, stating she would not be employed by the District during the 2004-2005 school year.

*2004–2005 school year*

At the beginning of this school year, the District did not employ plaintiff. She was listed on the county's substitute teacher call list. As a result of class-size-reduction requirements, however, the District needed an additional temporary teacher to teach another class. On October 1, 2004, the District again retained plaintiff as a substitute teacher.

During that academic year, the District had a policy requiring a substitute teacher on or before the teacher's first day of employment to sign a

"substitute verification form," confirming the teacher's status as a substitute. On October 1, 2004, plaintiff signed a substitute verification form verifying she had been retained as a substitute teacher and checked the box denoted "full day."

The former District superintendent declared the District then hired plaintiff to teach as a day-to-day substitute on October 4, 5, and 6 so it could evaluate her suitability to continue the assignment as a temporary teacher for the remainder of the year. In her deposition, plaintiff stated that after working on October 1, she continued working as a substitute on October 4, 5, and 6.[2]

On October 6, the District reclassified plaintiff and retained her as a temporary employee. Plaintiff acknowledged her temporary classification in writing that day, agreeing that she could be dismissed by the District at its pleasure prior to her serving one year. Her position was categorically funded. She was to report to work as a temporary teacher on October 7.

The District again chose not to reelect plaintiff for the following school year. It timely informed plaintiff of its decision by written notice dated February 15, 2005.

*2005–2006 school year*

Plaintiff was not working for the District at the beginning of the 2005–2006 school year. She remained listed on the county's substitute teacher call list.

Prior to the beginning of this school year, the District's responsibility for payroll and employee paperwork was transferred to the Shasta County Office of Education. That office did not utilize the substitute verification form the District had used when it retained a substitute teacher. Instead, the county office provided substitute teachers with timecards for them to complete. The teacher was to indicate the days of service and the regular teacher for whom the teacher substituted. The cards were to be used only by substitute teachers.

During the school year, a regular second grade teacher, Courtney Johnson, took a leave of absence. The District retained a temporary teacher to fill Johnson's position, but in November 2005 that teacher transferred to a regular position at another school.

---

[2] In a declaration made about two weeks after her deposition and filed in reply to the District's opposition to her petition, plaintiff stated she did *not* know she had been classified as a substitute employee for October 4, 5, and 6, 2004, until she read declarations submitted by the District the day before she made her declaration.

The District then contacted plaintiff to fill the position as a day-to-day substitute. Plaintiff completed and submitted to the District two timecards for work she performed in November and December 2005. She stated the District gave her each card; she kept it in her drawer, completed it, and turned it in to the District at the end of the month. The cards showed she worked 14 days in November and 12 days in December as a substitute for Johnson. In her deposition, plaintiff agreed that she had filled out the timecards because she was a "long-term sub and that's what long-term subs have to do."

Plaintiff's last day of work noted on the timecard was December 16, 2005. On that day, the superintendent presented plaintiff with a letter dated December 13 for her to sign to acknowledge she would be employed as a temporary teacher while Johnson was on leave. The superintendent declared that prior to that date, he had learned Johnson would be absent indefinitely, but up to the remainder of the academic year. He prepared the letter to notify plaintiff she would be a temporary teacher until Johnson returned. In the letter, he wrote, "You are currently being employed by the district as a temporary teacher filling Mrs. Courtney Johnson's position as a 2nd grade teacher while Mrs. Johnson is on leave."[3]

Plaintiff refused to sign the letter. She did not want to agree to serve as a temporary teacher. As a result of plaintiff's refusal to sign, the superintendent terminated her employment effective that day.

### Plaintiff's petition for writ of mandate

Plaintiff petitioned the trial court for a writ of mandate. She alleged the District had terminated her employment in violation of her statutory due process rights, and she sought to be reinstated and employed as a *permanent* employee. Plaintiff presented two alternative arguments in support of her claim. As a first argument, plaintiff claimed the District's actions and omissions in each of her employment years resulted in her being deemed a probationary teacher for two consecutive and full school years, thereby entitling her to be hired as a permanent employee for the 2005–2006 school year when the superintendent failed to classify her on her first day of work that year as a temporary employee.

This argument runs as follows:

(1) In October 2004, the District erroneously classified her as a substitute teacher for the first few days of her employment in the 2004–2005 school

---

[3] The prior superintendent had used the same "currently being employed" language when the District hired plaintiff to be a temporary teacher on November 6, 2003, after she had been serving as a substitute teacher.

year. The classification was wrong, plaintiff alleges, because she was not hired to fill in for a regular teacher but was instead hired to teach a new class created due to categorically funded class-size-reduction rules. Because she did not qualify as a substitute teacher, she was allegedly entitled to be classified on her first day of employment as a probationary employee under the default provision of sections 44915 and 44918, subdivision (b).

(2) Also, because the District did not timely notify her of her correct classification as a probationary teacher on the first day of her employment in October 2004, she was deemed a probationary employee for the 2004–2005 school year under section 44916.

(3) Because she was deemed a probationary employee in the 2004–2005 school year, her employment in the 2003–2004 school year as a temporary teacher for at least 75 percent of that year was also deemed a completed year of probationary employment under sections 44908 and 44918.

(4) The superintendent's letter dated December 13, 2005, indicates plaintiff in the 2005–2006 school year was considered to be a temporary employee at least by that date, a day plaintiff's timecard records she worked. However, the District did not give her notice of this classification until December 16. Because the District failed to notify her of her temporary employment classification as of the first day she worked in that classification, and because her prior two years of work were deemed to be two consecutive and complete years of work as a probationary teacher, plaintiff was entitled by law to be deemed a permanent teacher at least by December 13, 2005, under sections 44916 and 44929.21, subdivision (b).

(5) Accordingly, the District could not legally terminate plaintiff's employment in December 2005 without cause and had to reinstate her as a permanent employee.

In her second argument, plaintiff claimed that even if the court determined she was lawfully classified as a temporary employee for the 2004–2005 school year, she would be entitled to permanent employment for the 2006–2007 school year.

This argument proceeds as follows:

(1) Assuming plaintiff was a temporary employee for 2004–2005, she would nonetheless be deemed a probationary employee for 2005–2006 under section 44916 because the District allegedly failed to provide her with notice of her classification as a temporary employee on the first day of paid service that year;

(2) She also would be deemed a second-year probationary employee for 2005–2006 because the 2004–2005 school year would be deemed one year's employment as a probationary employee under section 44916 or 44918; and

(3) As a result, she could not be dismissed from her now probationary employment during the 2005–2006 school year without cause, and, because the District did not dismiss her by giving her the notice of nonreelection by March 15, 2006, she is deemed employed as a permanent employee for the 2006–2007 school year under sections 44929.21, subdivision (b), 44949 and 44955.

The trial court denied plaintiff's petition. It reasoned that plaintiff's case turned on whether the District could lawfully classify her as a substitute teacher for the first four days of her employment during the 2004–2005 school year. The court held the District could. It determined there was no law restricting the District from classifying plaintiff as a substitute for a few days to determine whether to hire her as a temporary teacher to teach the new class mandated by class-size-reduction rules for the remainder of the year. The District's purpose was not arbitrary or capricious, nor was it an attempt to circumvent plaintiff's tenure rights.

This decision also defeated plaintiff's alternative argument. Plaintiff was properly informed of her employment status in 2004–2005. Section 44916's default classification of probationary where the notice of classification is not given timely was thus not triggered.

Plaintiff now appeals, claiming the trial court's decisions on both of her arguments were incorrect. She repeats the arguments here for our consideration. The District opposes and also raises the defense of laches.

## DISCUSSION

### I

### *Standard of Review*

Ordinary mandamus is an appropriate remedy when challenging a school district's assignment, classification, or discipline of a teacher. (*Stryker v. Antelope Valley Community College Dist.* (2002) 100 Cal.App.4th 324, 329 [122 Cal.Rptr.2d 489]; Code Civ. Proc., § 1085.) In reviewing a trial court's judgment on a petition for writ of ordinary mandamus, we apply the substantial evidence test to the trial court's factual findings. We exercise our independent judgment on questions of law. (*Stryker v. Antelope Valley Community College Dist., supra,* at p. 329.)

## II

### Classification for 2005–2006 School Year

Plaintiff asserts she was entitled to be classified as a permanent employee in the 2005–2006 school year, and that the District could not therefore summarily terminate her. The trial court believed that for all of the statutory dominoes to fall in plaintiff's favor for this argument, she had to establish first that the District wrongfully classified her as a substitute teacher for the first four days of her employment in the 2004–2005 school year when she began teaching a new class created for purposes of class-size-reduction rules.

Plaintiff argues she could not have been classified as a substitute in 2004–2005 because she was not hired to replace a regular teacher who was absent. Because she was hired to teach a newly created class, plaintiff claims the District was statutorily mandated to classify her as a probationary employee for that year under sections 44915 and 44918, subdivision (b), or as a temporary employee under section 44909 as one teaching in a categorically funded program. Moreover, because the District failed to notify her of her "correct" employment status on her first day of work, she was deemed to be a probationary employee for the 2004–2005 school year.

Following from this argument, plaintiff claims if she was a probationary employee in 2004–2005, by law she became a probationary employee in 2003–2004. Because she then had two years of consecutive probationary employment, and because the District allegedly failed to give her timely notice of her employment classification in 2005–2006, she was entitled to be classified as a permanent employee that year and not to be summarily dismissed.

We agree with plaintiff that the District misclassified her as a substitute in October 2004. However, that point does not result in her being entitled to permanent employment in the 2005–2006 school year. Because she was dismissed and not reelected for the 2005–2006 school year, she is not entitled to the automatic grant of tenure under section 44929.21.

### A. Classification as substitute teacher in October 2004

We take time to discuss plaintiff's misclassification as a substitute teacher in order to disabuse the District of its argument that it has discretion to classify any teacher as a substitute when the Education Code does not expressly direct otherwise. Prior to the Supreme Court's decision in *Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821 [114 Cal.Rptr. 589, 523 P.2d 629] (*Balen*), appellate courts held that a school district was free to

classify a teacher in the employment agreement as a substitute or temporary teacher at its discretion except as compelled otherwise by statutory mandate. (See, e.g., *Rutley v. Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702, 705–706 [107 Cal.Rptr. 671] (*Rutley*); *Matthews v. Board of Education* (1962) 198 Cal.App.2d 748, 752–753 [18 Cal.Rptr. 101].)

The District here relies on *Rutley* to claim it had the authority to classify plaintiff as a substitute in her employment agreement because no statute compelled otherwise. In *Rutley*, a teacher who was classified as a substitute teacher on her first day of employment was assigned the next day to teach classes formerly taught by a regular teacher who had resigned. The teacher taught the classes for the remainder of the year, and then was terminated. She claimed she was entitled to be classified as a probationary employee by law. (*Rutley, supra*, 31 Cal.App.3d at p. 704.)

The appellate court disagreed. "It is blackletter law," the court wrote, "that, unless statutory mandate compels otherwise, the position of the teacher is . . . fixed by the terms of the contract of employment [citations]." (*Rutley, supra*, 31 Cal.App.3d at p. 705.) There was no such mandate in this instance. The catchall provision (now § 44915) did not direct who should be classified as a substitute. Former section 13336 (now § 44917), regarding the hiring of substitutes to replace regular teachers who are absent, did not address this situation. Former section 13508 (now § 45030) authorized the district to "employ such substitute employees of the district as it deems necessary . . . ." The court reasoned that either the Education Code was silent on the plaintiff's matter, or former section 13508 governed. In either event, there was no statutory mandate, and the terms of the contract controlled. (*Rutley, supra*, at pp. 705–706.)

■ In *Balen*, however, the Supreme Court implemented a rule of statutory construction of teacher classifications that has since altered how appellate courts review a school district's classification of a substitute or temporary teacher. The high court stated: "Because the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be *strictly* interpreted." (*Balen, supra*, 11 Cal.3d at p. 826, italics added.) The District does not reference *Balen* in its respondent's brief.

In *Balen*, a community college district terminated a part-time teacher without cause or a hearing. The district had rehired the teacher annually over four consecutive years, but it gave no procedural process because it classified the teacher as temporary and part-time. The teacher claimed that despite his classification by the district, he was in fact a permanent or probationary employee. (*Balen, supra*, 11 Cal.3d at p. 825.) The Supreme Court agreed,

concluding for a number of reasons that he was a probationary employee when he was hired and he maintained that status throughout his employment. He was thus entitled to a hearing. (*Id.* at pp. 831–832.)

Of significance here, the high court interpreted the relevant statutes defining temporary employees strictly. It determined the teacher did not meet any of the statutory grounds calling for a temporary classification. Instead, the teacher satisfied the statutory provisions regarding probationary employment, including the default statute. Thus, because the teacher did not satisfy any of the specific definitions of temporary employment, the district had no discretion to classify him as temporary. (*Balen, supra,* 11 Cal.3d at pp. 827–828, 829–831.)

Since *Balen,* appellate courts have interpreted the temporary classifications narrowly—so much so that if a teacher does not satisfy the statutory grounds for a temporary classification, the default or catchall provision of section 44915 mandates the district classify the teacher as a probationary employee. (*California Teachers Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 146, 150 [56 Cal.Rptr.3d 712] ["Section 44915 . . . establishes probationary status as the default classification for teachers whom the Education Code does not require to be classified otherwise."]; *Bakersfield, supra,* 145 Cal.App.4th at pp. 1279–1281, 1299.) In other words, it is no longer the case that a school district and a teacher are free to negotiate a teacher's classification in cases of a statutory gap.

*Bakersfield,* a case on which plaintiff relies, makes this point. It concerned a district that classified teachers based on the type of credential they held. The district classified teachers as temporary if they held something less than a regular credential. When the district laid off those teachers, the teachers claimed they had been misclassified. The district argued it was permitted to classify the teachers as temporary because the Education Code did not prohibit it. (*Bakersfield, supra,* 145 Cal.App.4th at p. 1280.)

The Court of Appeal disagreed, ruling that the district could classify teachers based only on the grounds provided in the Education Code. "If a certificated employee occupies a position the Code defines as temporary, he or she is a temporary employee; if it is not a position that requires temporary classification (or permanent or substitute), he or she is a probationary employee. (§ 44915.) The Code grants school districts no discretion to deviate from this statutory classification scheme. [Citation.]" (*Bakersfield, supra,* 145 Cal.App.4th at p. 1299.)

Turning back to our case, we note the Education Code provides only one ground for classifying a teacher as a substitute. The code requires a district to

classify as a substitute those teachers employed "to fill positions of regularly employed persons absent from service." (§ 44917.) There is no dispute that plaintiff was not hired in October 2004 to fill in for a teacher who was absent. She was hired to teach a new class. The District has provided us with no statutory basis on which it could classify plaintiff as a substitute. It is obvious, therefore, that the District misclassified plaintiff.

The District disagrees with this conclusion. Relying on *Rutley*, it asserts school districts may employ substitute teachers "as they deem necessary," and thus it had the authority to classify plaintiff as a substitute even though she was not filling in for an absent employee. The District's argument mirrors the language of section 45030 that authorizes a school district to hire "such substitute employees . . . as it deems necessary." Applying the District's argument, however, misinterprets section 45030 and ignores the rule of *Balen*, rendering section 44917 meaningless.

■ When interpreting a statute, "[c]ourts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] . . . Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] . . . 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.] [¶] Education Code sections bearing upon the same subject should be read and construed together. [Citation.] '[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.' (Code Civ. Proc., § 1859.)" (*Neumarkel v. Allard* (1985) 163 Cal.App.3d 457, 461–462 [209 Cal.Rptr. 616].)

Applying these rules of construction illustrates why the District's argument is not sound. If, as the District implies, section 45030 means the District can hire substitutes to serve in positions other than filling in for absent employees, then the Legislature had no reason to adopt section 44917 and its definition of substitutes as those teachers hired to fill in for regularly employed absent teachers.

■ We are required to interpret sections 44917 and 45030 together and within the context of the Education Code as a whole. Viewing section 45030 from that purpose, it is apparent the Legislature intended the statute to authorize districts to hire substitute teachers, as defined in section 44917, as the district deemed necessary. It does not mean a district could classify any teacher as a substitute no matter what duties the teacher performed.

 Our interpretation is also consistent with the policy supporting the classification statutes. "The [Education] Code's 'complex and somewhat rigid' classification scheme is intended . . . to limit rather than to enlarge the power of school districts to classify teachers as temporary employees. (*Kavanaugh, supra,* 29 Cal.4th at p. 917; see *Turner v. Board of Trustees* (1976) 16 Cal.3d 818, 825 [129 Cal.Rptr. 443, 548 P.2d 1115] [statutory scheme represents the 'delicate balancing' necessary to accommodate students' need for education, teachers' need for job security, and school boards' need for flexibility in evaluating and hiring employees].) 'The Legislature . . . has restricted the flexibility of a school district in the continued use of temporary employees [citations], for otherwise the benefits resulting from employment security for teachers could be subordinated to the administrative needs of a district.' (*Haase* [*v. San Diego Community College Dist.* (1980) 113 Cal.App.3d 913,] 918 [170 Cal.Rptr. 366].)" (*Bakersfield, supra,* 145 Cal.App.4th at p. 1280.)

Having concluded the District misclassified plaintiff as a substitute teacher in October 2004, we now turn to see what effect the District's action has on plaintiff's employment status and her right to due process upon termination.

### B. *Effect of misclassification*

We assume, for purposes of argument only, that the District's failure to notify plaintiff on her first day of employment in October 2004 of her correct classification resulted in plaintiff, under section 44916, being deemed a probationary employee for the 2004–2005 school year. This assumption also results in plaintiff being deemed a probationary employee for the 2003–2004 school year under section 44918, subdivision (a).

Based on these assumptions, plaintiff argues she became a permanent employee for the 2005–2006 school year. We recall that in that school year, plaintiff was hired in November 2005 as a substitute teacher until the District on December 16 presented plaintiff with a letter dated December 13 for her to acknowledge that she was "currently employed" as a temporary teacher. Plaintiff argues this letter indicates she was "currently employed" as a temporary employee as of December 13, but the District failed to notify her of her new status on that date, instead waiting until December 16 to inform her. Thus, she argues, the District's failure to notify her of her correct status under section 44916 resulted in her being deemed a probationary employee for the 2005–2006 school year. And, plaintiff continues, because she had already completed two consecutive years as a probationary employee, she was thus deemed a permanent employee. We disagree with both points.

First, the District did not fail to notify plaintiff of her new status on the first day of working in that new status. The District presented the letter to

plaintiff on December 16. Plaintiff's timecards show she was employed and worked as a substitute on December 13, 14, and 15. The superintendent declared that only substitute teachers use the timecards plaintiff used. Thus, the "currently employed" language, understood in its context, would have been effective only upon the District presenting the letter to plaintiff and plaintiff's signing and dating the letter as of the day she received it.

Second, and more importantly, plaintiff misunderstands the Education Code's automatic grant of permanent status. Working for two consecutive years as a probationary employee is not the only requirement for obtaining tenure. To become a permanent employee, plaintiff must also be "reelected for the next succeeding school year . . . ." (§ 44929.21, subd. (b).) There is no reelection where a school district timely notifies a probationary teacher that she is not being retained for the next succeeding school year. (*Horner v. Board of Trustees* (1964) 61 Cal.2d 79, 84 [37 Cal.Rptr. 185, 389 P.2d 713].) The District here gave plaintiff timely notice in the spring of 2005 that it was not reelecting her to work in the 2005–2006 school year. She thus was not reelected, and, as a result, did not qualify to be a permanent teacher in the 2005–2006 school year, even though she worked the prior two consecutive years as a probationary teacher.

██ As a result of this, plaintiff was serving only as a substitute teacher at the time she was dismissed. As noted above, substitutes may be dismissed at any time and without cause. Plaintiff thus has no ground to claim she was wrongly terminated without cause or due process.

III

*Classification for 2006–2007 School Year*

Plaintiff's alternative claim that she was entitled to be classified as a permanent employee for the 2006–2007 school year is based on her allegation that the District failed to give her notice of her temporary classification in the 2005–2006 school year, and thus she was a probationary employee that year. We have already determined this allegation is not supported by the evidence. The District gave plaintiff notice of her classification as a substitute teacher when she was first hired in November 2005, and then attempted to give her notice of her new temporary classification on December 16, which would have been the last day of her employment as a substitute, but plaintiff refused to accept it. Thus, at no time did plaintiff become a probationary employee during the 2005–2006 school year due to the failure to receive timely notice of her appropriate classification. As a result, the District was free to terminate her employment as a substitute teacher without cause or a hearing.

Because we rule in favor of the District on the merits, we need not reach its defense of laches.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the District. (Cal. Rules of Court, rule 8.278(a).)

Blease, Acting P. J., and Hull, J., concurred.