Filed 3/2/23  Wu v. Twin Rivers United School Dist. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| REBECCA WU, | C088570 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2015-80002234-CU-WM-GDS) |
| v. | |
| TWIN RIVERS UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

Plaintiff Rebecca Wu, representing herself in propria persona, appeals the trial court's order denying her petition for writ of mandate against defendant Twin Rivers Unified School District (District) in which she alleged the District misclassified her as a substitute teacher.  She argues that, because she performed the job functions of a full-time teacher upon her hiring and for multiple subsequent years, the District must recognize her as a tenured teacher.  The trial court disagreed and denied Wu's petition.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Wu worked for the District as an hourly substitute teacher at Elwood J. Keema High School (Keema High) for eight years. Keema High administers the District's independent study program and does not hold regular class instruction. Wu's duties as a substitute at Keema High were those of an independent study teacher. A vast majority of the independent study teachers at Keema High were hired as hourly substitutes. Many of the hourly substitutes were retired teachers, while others wanted to gain full-time employment with the District. All of the independent study teachers were required to meet federal and state credentialing standards for classroom instruction. Many independent study teachers, including Wu, held credentials in multiple subjects.

During Wu's employment with the District, she and other hourly substitutes working as independent study teachers selected a schedule for the school year that did not exceed three days a week. Independent study teachers were assigned students with whom they had to meet for an hour once a week. Within the hour assigned to each student, the independent study teacher had to review the homework assigned during the previous week, determine the attendance value of the homework turned in, and go over the curriculum for the following week.

The number of students assigned to each independent study teacher typically increased as the year progressed because students were referred to Keema High throughout the school year. At the beginning of each school year, independent study teachers worked between five and six hours a day, but by the end of the year they worked between eight and nine hours of direct instruction a day. The workday consisted of back-to-back student meetings and did not include a lunch, breaks, or a preparation hour (prep period). A typical full-time teacher working for the District commits five days a week to teaching and each day consists of five hours of instruction and an hour prep period, as well as a lunch and breaks. Wu was "let go" in the summer of 2016 and not rehired for the 2016 to 2017 school year.

Wu filed a petition for a writ of mandate under Code of Civil Procedure sections 1085 and 1086. Following discovery and a hearing on the merits, the trial court denied the petition. It found that, because Wu did not work more than 75 percent of the days in any given school year, she was not entitled to permanent/tenured status.

Wu appeals.

## DISCUSSION

Like Wu did in the trial court, she argues she is not a substitute teacher and the District must recognize her as a permanent/tenured teacher because she performed the same functions as a full-time teacher upon her hiring and for multiple subsequent years.[1] To prove this claim, Wu points to various provisions of the Education Code that pertain to the classification of teachers and when a given classification can change based on the teacher's duties and length of service. We agree with Wu that she was not a substitute teacher, but we disagree with Wu's position that she is entitled to permanent/tenured status.

### I

### *Applicable Law*

"Ordinary mandamus is an appropriate remedy when challenging a school district's assignment, classification, or discipline of a teacher. [Citation.] In reviewing a trial court's judgment on a petition for writ of ordinary mandamus, we apply the

---

[1] Wu presents a series of arguments related to the trial court's orders relieving her counsel, denying discovery motions, denying extensions of time, denying permission to file amended pleadings, and excluding expert evidence. Wu does not cite to relevant legal authority or apply pertinent legal standards as part of these arguments. As a result, these arguments are forfeited. "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as" forfeited. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 879 [" 'An appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as [forfeited], and pass it without consideration" ' "].)

substantial evidence test to the trial court's factual findings. We exercise our independent judgment on questions of law." (*Vasquez v. Happy Valley Union School Dist.* (2008) 159 Cal.App.4th 969, 980 (*Vasquez*).)

In matters concerning statutory construction, " '[t]he fundamental rule . . . is that the court should ascertain the legislative intent so as to effectuate the purpose of the law. To this end, every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. Legislative intent will be determined so far as possible from the language of the statutes, read as a whole. If the words of an enactment, given their ordinary and proper meaning, are reasonably free from ambiguity and uncertainty, the court will look no further to ascertain the legislative intent. In the construction of a statute, the office of the judge is simply to ascertain and declare what is contained therein, not to insert what has been omitted, or to omit what has been inserted.' " (*Kalamaras v. Albany Unified School Dist.* (1991) 226 Cal.App.3d 1571, 1576.)

As a general matter, the Education Code classifies California teachers into four different categories: permanent (tenured), probationary, substitute, and temporary. "In the case of permanent and probationary employees, the employer's power to terminate employment is restricted by statute. Substitute and temporary employees, on the other hand, fill the short[-]range needs of a school district and generally may be summarily released." (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 504-505.)

"The classification shall be made at the time of employment and thereafter in the month of July of each school year. At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a

4

written statement indicating his[, her, or their] employment status and the salary that he[, she, or they] is to be paid." (Ed. Code, § 44916.)[2]

"Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees." (§ 44915.) "Probationary teachers have limited protections against dismissal. School districts may dismiss a probationary employee during the school year only for cause or unsatisfactory performance. (§ 44948.3.) However, a school district can terminate a probationary teacher's employment effective the end of the teacher's yearly contract without cause." (*Vasquez*, *supra*, 159 Cal.App.4th at p. 974.)

With limited exceptions not applicable here, "governing boards of school districts shall classify as substitute employees those persons employed in positions requiring certification qualifications, to fill positions of regularly employed persons absent from service." (§ 44917.) Temporary employees are those persons who require certification qualifications, other than substitute employees, and who are employed for a limited duration of the school year for various reasons. (§ 44919.)

Section 44918 extends probationary status to "[a]ny employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in that school year and has performed the duties normally required of a certificated employee of the school district, . . . if employed as a probationary employee for the following school year."

Section 44929.21 extends tenured status to "[e]very employee of a school district . . . who, after having been employed by the district for two complete consecutive school

---

[2]     Further undesignated section references are to the Education Code.

5

years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications . . . ." (§ 44929.21, subd. (b).) "A probationary employee who, in any one school year, has served for at least 75 percent of the number of days the regular schools of the district in which he[, she, or they] is employed are maintained shall be deemed to have served a complete school year." (§ 44908.)

## II

### *Wu Was Misclassified*

The parties agree that Wu was not hired to replace a teacher. She had her own students and a schedule that was set for the entire year at the end of the preceding school year. The District argues that Wu's position did not fit well within the four teacher classifications under the Education Code, and thus the District was free to pick the classification it thought best.

"We take time to discuss [Wu]'s misclassification as a substitute teacher in order to disabuse the District of its argument that it has discretion to classify any teacher as a substitute when the Education Code does not expressly direct otherwise." (*Vasquez*, *supra*, 159 Cal.App.4th at p. 981.) In *Balen v. Peralta Junior College Dist*. (1974) 11 Cal.3d 821, our Supreme Court implemented a rule of statutory construction of teacher classifications. Our Supreme Court stated: "Because the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted." (*Id.* at p. 826.)

"In *Balen*, a community college district terminated a part-time teacher without cause or a hearing. The district had rehired the teacher annually over four consecutive years, but it gave no procedural process because it classified the teacher as temporary and part-time. The teacher claimed that despite his classification by the district, he was in fact a permanent or probationary employee. [Citation.] The Supreme Court agreed, concluding for a number of reasons that he was a probationary employee when he was

6

hired and he maintained that status throughout his employment. He was thus entitled to a hearing. [Citation.]

"Of significance here, the high court interpreted the relevant statutes defining temporary employees strictly. It determined the teacher did not meet any of the statutory grounds calling for a temporary classification. Instead, the teacher satisfied the statutory provisions regarding probationary employment, including the default statute. Thus, because the teacher did not satisfy any of the specific definitions of temporary employment, the district had no discretion to classify him as temporary. [Citation.]

"Since *Balen*, appellate courts have interpreted the temporary classifications narrowly—so much so that if a teacher does not satisfy the statutory grounds for a temporary classification, the default or catchall provision of section 44915 mandates the district classify the teacher as a probationary employee. (*California Teachers Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 146 . . . ['Section 44915 . . . establishes probationary status as the default classification for teachers whom the Education Code does not require to be classified otherwise.']; *Bakersfield*[ *Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006)] 145 Cal.App.4th [1260,] 1279-1281 . . . .) In other words, it is no longer the case that a school district and a teacher are free to negotiate a teacher's classification in cases of a statutory gap." (*Vasquez*, *supra*, 159 Cal.App.4th at pp. 982-983.)

Indeed, "[i]f a certificated employee occupies a position the Code defines as temporary, he or she [or they] is a temporary employee; if it is not a position that requires temporary classification (or permanent or substitute), he or she [or they] is a probationary employee. (§ 44915.) The Code grants school districts no discretion to deviate from this statutory classification scheme." (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.*, *supra*, 145 Cal.App.4th at p. 1299.)

Turning to Wu's case, "we note the Education Code provides only one ground for classifying a teacher as a substitute. The Code requires a district to classify as a

7

substitute those teachers employed 'to fill positions of regularly employed persons absent from service.' (§ 44917.)" (*Vasquez, supra*, 159 Cal.App.4th at pp. 983-984.)  There is no dispute Wu was not hired to fill in for a teacher who was absent.  She was hired to teach a group of students in an independent study format.  Wu should have been classified as a probationary teacher.

III

*Wu Is Not Entitled To Permanent/Tenured Status*

Wu concedes she worked only three days a week.  By this concession, Wu acknowledges she has not met the plain requirement of sections 44929.21 and 44908, that she work a complete school year.  (See *Cox v. Los Angeles Unified School Dist*. (2013) 218 Cal.App.4th 1441, 1445 ["Education Code section 44908 defines a 'complete school year' as 'at least 75 percent of the number of days the regular schools of the district in which he is employed are maintained . . . .'  [Under § 44929.21, a] probationary employee . . . must serve 'two complete consecutive school years in a position or positions requiring certification qualifications' prior to becoming classified as a permanent employee"].)

To get around this statutory requirement, Wu argues she worked the same number of hours as a full-time teacher worked in a school year.  A similar argument was rejected in *Cox v. Los Angeles Unified School Dist.*, *supra*, 218 Cal.App.4th 1441.  There, the court precluded a probationary teacher from using weekends and extra hours when calculating the total number of days the probationary teacher worked.  (*Id*. at p. 1446.)  The *Cox* court reasoned, "[S]ection 44908 refers just to 'days' not 'hours.'  So, even if [the plaintiff] was paid for more than six hours . . . , any additional hours do not yield another 'day.'  [The plaintiff] asserts that 'Section 44908 does not require that a probationary employee have worked on any particular day.'  Yet, the wording of section 44908 (i.e., the school year is counted by adding up the 'number of days the regular schools of the district . . . are maintained') indicates otherwise; that is, by using words

8

such as 'maintained,' only days on which schools are 'open' (e.g., not a Saturday or a Sunday) count." (*Cox*, at p. 1446.)

We agree with the *Cox* court's analysis of section 44908. The section's focus on days a probationary teacher must work within the context of days the school is maintained delineates an intent to hold teachers to a daily presence requirement, as opposed to an hourly requirement. We further agree with the *Cox* court that *Vittal v. Long Beach Unified School Dist.* (1970) 8 Cal.App.3d 112 is distinguishable. (*Cox v. Los Angeles Unified School Dist.*, *supra*, 218 Cal.App.4th at p. 1447.) In *Vittal*, the court permitted a junior college probationary teacher to base her 75 percent calculation on hours worked, instead of days worked, under analogous statutory language pertaining to junior college teachers. (*Vittal*, at p. 120.) The *Vittal* court acknowledged the language of the statute at issue there mirrored the language of the statute at issue here, which is applicable to primary and secondary education. (*Ibid.*) The *Vittal* court distinguished the intent behind the statute applicable to junior colleges given junior colleges did not practice the "usual and generally prevailing situation in elementary and secondary schools in which teachers are assigned [to] classes taught five days a week." (*Ibid.*) Further, another provision applicable to junior colleges permitted the 75 percent calculation to be based on the number of hours worked, manifesting an intent to distinguish the type of work performed by junior college teachers from the work performed by elementary and secondary school teachers. (*Id*. at pp. 120-121.) Given Wu's status as a secondary school teacher, the reasoning of *Vittal* is not applicable to her case, and her 75 percent calculation cannot be based on hours worked.

Wu argues her employment was contrary to the intent of the Legislature in enacting the teacher classification provisions. She argues the Legislature intended to incentivize permanent status and did not intend for teachers to fall into perpetual probationary status. But the Education Code clearly contemplates part-time probationary

9

employment considering the code provides a threshold for permanency. (§ 44929.21.) Thus, Wu's employment status is permitted under the Education Code.

Wu argues she is entitled to permanent/tenured status as a matter of contract. She contends that if she were properly classified as a probationary teacher when she was hired, she would have been a member of the union. She further argues the collective bargaining agreement between the union and the District requires employees hired as probationary teachers to work five days a week for five hours of instruction and one hour of prep period. Wu's conclusion is that if she were properly classified upon her hiring, she would have worked the required number of days in a school year and reached permanent status.

The problem with Wu's contention is that she has not carried her burden in establishing the factual predicates to her argument. Wu has failed to point to any provision of the collective bargaining agreement that requires all probationary teachers to work more than 75 percent of the days in any given school year. Wu claims all probationary instructional teachers she knew were entitled to work a full-week schedule under the collective bargaining agreement. But, as the District points out, Wu held a position different from a typical instructional teacher. It is not clear Wu would have been entitled to a longer work schedule, or any benefit beyond those contained in her contract with the District, had she simply been classified as a probationary teacher.

Wu also cannot demonstrate she worked 75 percent of the days an evening school was in session. (§ 44908 ["In case of evening schools, 75 percent of the number of days the evening schools of the district are in session shall be deemed a complete school year"].) While Wu argues she worked when Keema High was open in the evening hours, she has failed to demonstrate Keema High is an evening school under the Education Code. (§ 52500 ["Adult schools and evening high schools shall consist of classes for adults. Minors may be admitted to those classes pursuant to board policy and Section 52500.1"].)

10

Accordingly, Wu has not demonstrated she was entitled to permanent/tenured status.  While she was misclassified as a substitute teacher, the misclassification was of no consequence because Wu was terminated at the end of her contract when no cause is required and due process considerations are lowered.

DISPOSITION

The trial court's judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


/s/
ROBIE, Acting P. J.



We concur:



/s/
HULL, J.



/s/
MAURO, J.